UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| FUTURE MOTION, INC., | Case No. 21-cv-03022-JSC |
|---|---|
| Plaintiff, | |
| v. | **ORDER OF REASSIGNMENT AND REPORT AND RECOMMENDATION RE: MOTION FOR DEFAULT JUDGMENT** |
| JOHN DOE, | |
| Defendant. | Re: Dkt. No. 23 |

Plaintiff Future Motion, Inc., filed suit against John Doe, an unknown party doing business as Floatwheel ("Defendant"), alleging patent infringement in violation of the Patent Act, 35 U.S.C. §§ 1, *et seq.*, and specifically in violation of 35 U.S.C. § 271(b)–(c). (Dkt. No. 1 at 2.) Now pending before the Court is Plaintiff's motion for default judgment. (Dkt. No. 23.) Because the Court has not obtained consent from Defendant pursuant to 28 U.S.C. § 636, the Clerk is ordered to reassign this action to a district court judge. *See Williams v. King*, 875 F.3d 500, 504 (9th Cir. 2017). The Court recommends that the newly-assigned district court judge GRANT Plaintiff's motion for default judgment.

## BACKGROUND

### I. Complaint Allegations

Plaintiff is a Delaware corporation with its principal place of business located at 1201 Shaffer Road, Santa Cruz, California 95060. (Dkt. No. 1 ¶ 1.) Defendant is an unknown individual who is assumed to reside in Guangxi, China, with an email address of 425136673@qq.com and/or diyonewheel@gmail.com, and no known physical address. (*Id.* ¶ 2.) Defendant is doing business as "Floatwheel," including operation of an e-commerce website, www.floatwheel.com, and related YouTube channel, https://www.youtube.com/channel/UC_7p3yqxNR24i-9Qtu1Haxg. (*Id.*)

1    Plaintiff markets and sells a line of self-balancing electronically motorized skateboards along with related accessories, replacement parts, and merchandise. (*Id.* ¶ 7.) These patented products ("ONEWHEEL®" products) are sold in part through Plaintiff's online retail store, https://onewheel.com. (*Id.*) Plaintiff contends that Defendant is infringing the following patents: U.S. patent numbers 9,452,345 ("345 patent") (Sept. 27, 2016), 9,717,978 ("978 patent") (Aug. 1, 2017), 9,802,109 ("109 patent") (Oct. 31, 2017), 9,861,877 ("877 patent") (Jan. 9, 2018), and 10,143,910 ("910 patent") (Dec. 4, 2018). (*Id.* ¶¶ 9–13.)

Plaintiff alleges that Defendant makes, uses, offers for sale, sells, and imports into the U.S. components that are both individually and collectively material components of Plaintiff's patented products. (*Id.* ¶ 14.) Through its e-commerce website, www.floatwheel.com, Defendant sells do-it-yourself product kits ("DIY kits") which include aluminum rails and footpads and separately sells "a wheel with a hub motor and tire, a motor controller programmed with a self-balancing algorithm, and a battery pack, all suitable for use in constructing an infringing self-balancing skateboard in conjunction with the DIY kit." (*Id.* ¶¶ 15–16.) Defendant has published at least six videos on its YouTube channel instructing purchasers how to construct a working self-balancing skateboard out of the components purchased through Defendant's website. (*Id.* ¶ 19.)

**II.    Procedural History**

In April 2021, Plaintiff filed this action alleging patent infringement. (Dkt. No. 1.) Plaintiff attempted to identify Defendant for service of process through Defendant's internet domain and the "Floatwheel" YouTube channel but could not find identifying information other than that the domain owner was located in Guangxi, China. (Dkt. No. 8 at ¶ 1.) On November 16, 2020, Plaintiff attempted to contact Defendant through the floatwheel.com domain registrar (GoDaddy), and received an email from 425136673@qq.com to submit inquiries to 425136673@qq.com. (*Id.* ¶¶ 2–3.) Plaintiff subsequently sent a cease and desist letter to the email address provided by the domain holder website and received a response stating "Conformed [sic]." (*Id.* ¶¶ 4–5.)

After receipt of the cease and desist letter, Defendant temporarily removed its products for sale but recommenced product sales a few months later. (Dkt. No. 8-1 ¶ 7.) Upon discovering that Defendant was again offering its products for sale, Plaintiff "set[] up an order to confirm that the

Defendant would ship its products to the United States." (*Id.* ¶ 9.) In doing so, Plaintiff discovered that Defendant's e-commerce website provides the contact email address diyonewheel@gmail.com for inquiries regarding website terms of service, privacy policy, refund policy, and shipping policy. (*Id.*; Dkt. No. 8-7.)

Plaintiff thereafter filed a motion to permit service of a foreign defendant by email. (Dkt. Nos. 8; 8-1 ¶ 9.) The Court denied the motion without prejudice as Plaintiff had not sufficiently shown that Defendant's address was unknown and thus service under Rule 4(f)(3) was not yet appropriate. (Dkt. No. 14 at 4.) Plaintiff filed a second motion to permit service by email, arguing that it had made efforts exceeding the required standards to obtain Defendant's identity and physical address by requesting Defendant provide a physical address, engaging a native Chinese speaker to search for Defendant's physical address, and searching for Defendant's information on the Chinese government website for the region where Defendant was suspected to reside. (Dkt. No. 16 at 2–3.) The Court granted the second motion to permit service by email, concluding that Plaintiff had "adequately shown that service by electronic mail would provide actual notice to Defendant." (Dkt. No. 17 at 4.)

On July 20, 2021, Plaintiff's attorney served the complaint, summons, and a copy of the Court's order permitting service by email to the addresses 425136673@qq.com and diyonewheel@gmail.com. (Dkt. No. 18.) Defendant failed to answer or respond to the Complaint or serve a copy of the answer or other responses upon Plaintiff's attorney of record.

Plaintiff then filed a motion for an entry of default. (Dkt. No. 21.) The Clerk entered Defendant's default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Dkt. No. 22.)

Plaintiff thereafter filed the underlying motion for default judgment seeking a permanent injunction enjoining Defendant from offering, selling, or importing the infringing products into the U.S., and from posting videos that induced infringement. (Dkt. No. 23 at 8.)

**DISCUSSION**

**I.    Jurisdiction**

District courts have an affirmative duty to examine their jurisdiction—both subject matter and personal jurisdiction—when default judgment is sought against a non-appearing party. *See In*

3

*re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). An entry of default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). "[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

### A. Subject Matter Jurisdiction

The Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff pleads patent infringement under the Patent Act. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see also* 35 U.S.C. § 271(a) ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.").

### B. Personal Jurisdiction

Whether the district court has personal jurisdiction over a plaintiff's patent infringement claim against a nonresident defendant is controlled by Federal Circuit law—"the jurisdictional issue is 'intimately involved with the substance of the patent laws.'" *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008) (cleaned up). Two questions determine whether there is personal jurisdiction over a nonresident defendant: "whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001). California's long-arm statute is coextensive with federal due process requirements and thus the jurisdictional analysis is the same. *See* Cal. Civ. Proc. Code § 410.10; *see also Avocent Huntsville Corp.*, 552 F.3d at 1329 (explaining that when a state's long-arm statute is coterminous with federal due process limits, the "jurisdictional analysis collapses into a single determination of whether the exercise of personal jurisdiction comports with due process"). Although the plaintiff has the burden of establishing the court's personal jurisdiction over the defendant, the plaintiff need only make a prima facie showing of personal jurisdiction. *Avocent Huntsville Corp*. 552 F.3d at 1328–29.

"[A] defendant may be subject to either specific jurisdiction or general jurisdiction." *LSI

1  *Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (citing *Burger King*
2  *Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)); *see generally Walden v. Fiore*, 571 U.S. 277,
3  283 n.6 (2014) (explaining that general jurisdiction "permits a court to assert jurisdiction over a
4  defendant based on a forum connection unrelated to the underlying suit" while specific jurisdiction
5  depends on "an activity or an occurrence that takes place in the forum State and is therefore
6  subject to the State's regulation") (cleaned up). As a preliminary matter, Plaintiff does not allege
7  that the Court has general personal jurisdiction over Defendant. (Dkt. No. 29 at 3.)

8   For a court to exercise specific jurisdiction, the suit must arise out of or relate to a
9  defendant's contacts with the forum state. *Bristol-Meyers Squibb Co. v. Superior Court*, 137 S. Ct.
10 1773, 1780 (2017); *see also Walden*, 571 U.S. at 290 n.9 ("[T]he 'minimum contacts' inquiry
11 principally protects the liberty of the nonresident defendant, not the interests of the plaintiff.")
12 (cleaned up). A defendant's "'random, fortuitous, or attenuated' contacts" will not suffice.
13 *Walden*, 571 U.S. at 286 (quoting *Burger King*, 471 U.S. at 475). "[F]or purposes of specific
14 jurisdiction, the jurisdictional inquiry is relatively easily discerned from the nature and extent of
15 the commercialization of the accused products or services by the defendant in the forum." *Avocent*
16 *Huntsville Corp.*, 552 F.3d at 1332. (cleaned up).

17  The Federal Circuit applies a three-part test to determine whether a nonresident defendant
18 is subject to specific personal jurisdiction: (1) a nonresident defendant must purposefully direct his
19 activities at residents of the forum; (2) the claim must arise from or relate to these forum-related
20 activities; and (3) the exercise of jurisdiction must be reasonable and fair. *See Breckenridge*
21 *Pharm., Inc. v. Metabolite Labs.*, Inc., 444 F.3d 1356, 1363 (Fed. Cir. 2006). "The first two factors
22 correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third
23 factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Inamed Corp.*
24 *v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (quoting *Akro Corp. v. Luker*, 45 F.3d 1541,
25 1545 (Fed. Cir. 1995)).

26  Plaintiff's initial briefing failed to demonstrate that personal jurisdiction existed over the
27 nonresident defendant, and the Court thus ordered Plaintiff to show cause regarding its specific
28 personal jurisdiction assertion. (Dkt. No. 26.) In response, Plaintiff alleges that Defendant operates

"a highly interactive, transaction-oriented website, the sole purpose of which appears to be to sell the products Future Motion accuses of infringement" and offers evidence of a sale through the website into California.[1]  (Dkt. No. 29 at 4.)  Plaintiff also contends that "California is well-known as the place of origin and U.S. epicenter of skateboarding" and therefore "at least a plurality" of Defendant's customers are likely from California and, indeed, California sales represent around 15-20% of Future Motion's sales.  *Id.* at 5.  Having reviewed Plaintiff's response, the Court concludes that Plaintiff has adequately established personal jurisdiction over the Doe Defendant.

### 1) Purposeful Direction

The first prong of the test requires more than mere presence on the internet or availability of a website.  *See NexLearn LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1378 (Fed. Cir. 2017).  The Federal Circuit evaluates websites "as [it] would any other contact under a specific jurisdiction theory; for there to be minimum contacts, there must be evidence that [the defendant] purposefully availed itself of [the forum state] and that [the plaintiff's] claim arises out of or relates to those contacts."  *Id*.  "What is sufficient may vary from case to case, but it cannot be that the mere existence of an interactive website, like the existence of an out-of-state store, is 'suit-related conduct . . . creat[ing] a substantial connection with the forum State.'"  *Id.* at 1379 (quoting *Walden*, 571 U.S. at 284).

While Plaintiff first highlights Defendant's website as evidence of Defendant's purposefully directed activities, Plaintiff's evidence here goes beyond what the Federal Circuit held insufficient in *NexLearn*.  (Dkt. No. 29-1 at ¶ 2 (describing Defendant's interactive website which allows consumers to purchase DIY kits containing allegedly infringing products).)  In *NexLearn*, "[t]here [wa]s no evidence that Allen's website facilitated the making, using, offering, or selling of ZebraZapps in Kansas in order to connect Allen's website with NexLearn's patent infringement claim."  *NexLearn*, 859 F.3d at 1378.  Here, in contrast, Plaintiff offers evidence of a

---

[1] On a motion for default judgment, the court can consider evidence beyond the allegations of the complaint in determining whether there is personal jurisdiction.  *In re Tuli*, 172 F.3d 707, 713 (9th Cir. 1999) (holding that the court erred in denying default judgment based on lack of personal jurisdiction without giving the plaintiff "an opportunity to assert facts to establish Iraq's contacts with the United States.").

sale of the infringing product to a California customer. (Dkt. No. 29-1 at ¶¶ 5-6.) Likewise, while the court in *NexLearn* pointed to its earlier finding in *Trintec Indus., Inc. v. Pedre Promotional Prods*., Inc., 395 F.3d 1275, 1281 (Fed. Cir. 2005), that a specific jurisdiction theory based generally on the sale of products throughout the country was insufficient, here, in contrast, Plaintiff offers evidence that based on its own sales, California holds the largest share of the sales market for its product. *NexLearn*, 859 F.3d at 1378. (Dkt. No. 29 at 5 ("California is well-known as the place of origin and U.S. epicenter of skateboarding"); Dkt. No. 29-1 at ¶ 7 ("Future Motion's California sales represent 15-20% of its total sales revenue, both currently and historically, [which] makes California Future Motion's single largest market for its ONEWHEEL products.").) The evidence of Plaintiff's own sales supports an inference that Defendant makes regular sales to Californians.

Accordingly, drawing all inferences in Plaintiff's favor, Plaintiff has met its burden to show that Defendant purposefully directed intentional acts at California residents. *See NexLearn, LLC*, 859 F.3d at 1378 ("Absent evidence that "any [forum] residents have ever actually used [the defendant's] website to transact business," the plaintiff's allegations were insufficient to establish specific jurisdiction) (internal quotation marks and citation omitted); *see also Trintec Indus*., 395 F.3d at 1282–83 ("the district court must construe all pleadings and affidavits in the light most favorable to the plaintiff" and resolve any factual conflicts in the affidavits in the plaintiff's favor on the jurisdictional question).

**2) Claim Arises Out of Forum-Related Activity**

The second prong of the Federal Circuit's three-part test is whether a plaintiff's claim arises from or relates to a defendant's forum-related activities. *See Breckenridge Pharm., Inc.*, 444 F.3d at 1363. In a patent infringement suit, "the claim asserted by the patentee plaintiff is that some act of making, using, offering to sell, selling, or importing products or services by the defendant constitutes an infringement of the presumptively valid patent named in suit." *Avocent Huntsville Corp.*, 552 F.3d at 1332 (citing 35 U.S.C. § 271(a)). Plaintiff alleges that Defendant makes, sells, and offers to sell the allegedly infringing products, and that Defendant is infringing on at least five U.S. patents by importing into the U.S. components that are both individually and

collectively material parts of Plaintiff's patented products as well as inducing infringement through Defendant's instructive Youtube videos. Plaintiff's claims arise out of Defendant's selling of the allegedly infringing products within California and inducing infringement, and thus this second prong is met.

### 3) Reasonableness

The final consideration is whether the exercise of jurisdiction over a defendant is reasonable and fair. *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1299 (Fed. Cir. 2009). "To determine whether exercising personal jurisdiction would comport with 'fair play and substantial justice,' we consider five factors: (1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies." *Id.* (quoting *Burger King*, 471 U.S. at 477). While "[t]hese considerations [may] sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required[,] . . . where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. Defendant failed to appear in this action and thus has not presented a compelling case that additional "considerations would render jurisdiction unreasonable." *Id.* Still, an independent analysis of the factors suggests that the exercise of personal jurisdiction over Defendant would not be unreasonable.

First, although litigating in a foreign jurisdiction may burden Defendant, Plaintiff's interest in obtaining relief and California's interest in adjudicating the dispute outweigh the potential burden. *See Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 114 (1987) ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."); *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1356 (Fed. Cir. 2017) ("[I]nstances in which the fairness analysis will defeat otherwise constitutional personal

jurisdiction are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.") (cleaned up); *Talavera Hair Prods., Inc. v. Taizhou Yunsung Elec. Appliance Co. Ltd.*, No. 18-CV-823 JLS (JLB), 2021 WL 3493094, at *11 (S.D. Cal. Aug. 6, 2021) ("Given that the Defaulting Defendants have failed to appear in this action, they have not presented a compelling case that the exercise of personal jurisdiction would be unreasonable.").

Second, no conflict appears to exist with Defendant's sovereign state. Moreover, "[t]he United States has a substantial interest in enforcing the federal patent laws." *Synthes*, 563 F.3d at 1299 (cleaned up) ("The United States also has an interest in discouraging injuries that occur within its boundaries, including injuries resulting from patent infringement.").

Third, Plaintiff states cognizable claims for patent infringement and injunctive relief resulting from Defendant's allegedly infringing products. Thus, Plaintiff demonstrates a valid interest in obtaining relief. *See id.* at 1300 ("While we express no view as to [plaintiff's] likelihood of success on the merits, we are not prepared to say that [plaintiff] has failed to allege an injury for which it has an interest in obtaining relief.").

Both the fourth and fifth factors are "concerned with the potential clash of substantive social policies between competing fora and the efficiency of a resolution to the controversy." *Id.* (citing *Burger King*, 471 U.S. at 477). However, when the forum is the United States as is the case with patent infringement claims, there is no other U.S. forum available to a plaintiff. *Id.* Plaintiff's principal place of business is in California, and the alleged patent infringement occurred in California. Thus, "there is no U.S. forum with which to compare the efficiency of a resolution or with respect to which there is a clash of social policies." *Id.*; *see also Talavera Hair Prods., Inc.*, 2021 WL 3493094, at *11 ("That Plaintiff is located in the United States and the alleged injury occurred here weighs strongly in favor of exercising jurisdiction."). Furthermore, the Court has "no reason to believe that 'the Federal Government's interest in its foreign relations policies' with [China] will be hindered by allowing the district court to exercise personal jurisdiction over [Defendant]." *Synthes*, 563 F.3d at 1300 (quoting *Asahi Metal Indus.*, 480 U.S. at 115). As to the

fifth factor, "there does not appear to be any conflict between the interests of California and any other state, because 'the same body of federal patent law would govern the patent invalidity claim irrespective of the forum.'" *Xilinx, Inc.*, 848 F.3d at 1356 (quoting *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1352 (Fed. Cir. 2003)).

Accordingly, in light of the above analysis, the exercise of specific personal jurisdiction over Defendant is reasonable and the Court DISCHARGES the Order to Show Cause.

**II.    Service**

The Court must additionally ensure that "the procedural requirement of service of summons" has been satisfied. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (noting that "one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure.") (citing Fed. R. Civ. Proc. 4(a)). "The Constitution does not require any particular means of service of process, only that the method selected be reasonably calculated to provide notice and an opportunity to respond." *Rio Props., Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002). Email service is proper "when a company has structured its business such that it could only be contacted via its email address, and email is the method of communication the company utilizes and prefers." *Bright Solutions for Dyslexia, Inc. v. Lee*, No. 15-CV-01618-JSC, 2017 WL 10398818, at *7 (N.D. Cal. Dec. 20, 2017).

Here, email service was proper because Defendant could only be contacted by email as no physical address for Defendant existed online and "email service was properly ordered by the district court using its discretion under Rule 4(f)(3)." *Rio Props., Inc.*, 284 F.3d at 1018. Plaintiff's emails were not returned as unsent and service was therefore proper. *See Bright Solutions for Dyslexia, Inc.*, 2017 WL 10398818, at *7 (service by email was proper when business could only be contacted by email and emails did not bounce back); *Steve McCurry studios LLC v. Web2Web Marketing, Inc.*, No. C 13-80246 WHA, 2014 WL 1877547, at *2 (N.D. Cal. May 9, 2014) (service by email was proper even though plaintiffs' counsel did not receive a response to their email about service of subpoenas and the email also did not bounce back).

**III.   Default Judgment *Eitel* Factors**

Pursuant to Federal Rule of Civil Procedure 55(b), a district court may grant default judgment after the Clerk's entry of default. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe*, 616 F.2d at 1092. Courts consider the following factors in determining whether to enter default judgment:

> (1) The possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Upon entry of default, the court deems the complaint's factual allegations related to liability to be true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Here, consideration of the *Eitel* factors weighs in favor of granting default judgment.

### A. Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if the court denies default judgment. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010). In *Craigslist*, the court found that denial of the plaintiff's request for judgment and injunctive relief would leave the plaintiff "prone to continued circumvention of its security measures" by defendants, and that "failure to enter judgment would cause substantial harm to [the plaintiff.]" *Id.* Because Plaintiff may similarly be without recourse for recovery if default judgment is not entered, this factor favors granting default judgment.

### B. Merits of Claims and Sufficiency of Complaint

The second and third *Eitel* factors require the plaintiff "to plead facts sufficient to establish and succeed upon its claims." *Craigslist, Inc.*, 694 F. Supp. 2d at 1055. After the clerk enters default, the Court takes the well-pleaded factual allegations of the complaint as true, except for those allegations relating to damages. *See Geddes*, 559 F.2d at 560. "The district court is not required to make detailed findings of fact." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

Plaintiff alleges that Defendant has both induced infringement of Plaintiff's five U.S. patents ('345, '978, '109, '877, and '910 patents) in violation of 35 United States Code section

11

271(b) and contributorily infringed these patents in violation of 35 United States Code section 271(c). (*See* Dkt. No. 23 at 11–12.) The Complaint sufficiently alleges that Plaintiff holds multiple U.S. patents for its self-balancing electric skateboard. (*See* Dkt. No. 1-1–1-5.)

"Induced infringement under 35 U.S.C. § 271(b) requires proof of underlying direct infringement, as well as proof that (1) the defendant knew of the patent, (2) the defendant knew or should have known that the induced acts constitute patent infringement, and (3) the defendant possessed specific intent to encourage another's infringement." *Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1335 (Fed. Cir. 2021). "Contributory infringement under 35 U.S.C. § 271(c) requires proof that (1) the defendant had 'knowledge of the patent in suit,' (2) the defendant had 'knowledge of patent infringement,' and (3) the accused product is not a staple article or commodity of commerce suitable for a substantial noninfringing use." *Id.*

Plaintiff's asserted patents comprise a self-balancing electric skateboard. The underlying direct infringement occurs when customers purchase Defendant's components and construct them into an infringing product. (Dkt. No. 1 ¶¶ 14–15.) Defendant's knowledge of the patents is evidenced by Defendant's confirmation of receipt of Plaintiff's cease and desist letter whereafter Defendant temporarily stopped offering the infringing products for sale on its website. (*Id.* ¶ 22.) Moreover, Defendant's Youtube account, "Floatwheel," contains a video where the caption reads, "[w]e got a lawsuit threat from Future motion to freeze our payment account." (Dkt. No. 1-8 at 5.) This caption indicates Defendant's knowledge of the patent and the alleged infringement. Defendant's specific intent to encourage infringement by others is evidenced by the Youtube videos describing how to construct a self-balancing electric skateboard, the components of which can be purchased on Defendant's website. Additionally, the accused product, a self-balancing electric skateboard, is not a "staple article or commodity of commerce" and thus Plaintiff pleads sufficient facts to establish and succeed on its claims. *Bio-Rad Lab'ys, Inc.*, 998 F.3d at 1335.

Given Defendant's knowledge of the patents in suit and alleged infringement, as well as specific intent to inform others how to assemble or construct a self-balancing electric skateboard, Plaintiff has sufficiently alleged these indirect infringement claims.

**C. Money at Stake**

1  The fourth *Eitel* factor concerns the amount of money at stake in relation to the seriousness of the defendant's conduct. *Eitel*, 782 F.2d at 1471–72. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in light of defendant's actions." *Tech. LED Intellectual Prop., LLC v. Revogi, LLC*, No. 19-CV-01277-JSC, 2020 WL 5823277, at *8 (N.D. Cal. Aug. 28, 2020) (cleaned up). Conversely, default judgment may be appropriate where it is "tailored to [the defendant's] specific misconduct." *Bd. of Trs. v. Superhall Mech., Inc.*, No. C-10-2212 EMC, 2011 WL 2600898, at *2 (N.D. Cal. June 30, 2011).

Here, Plaintiff does not seek any monetary damages through its motion—it seeks injunctive relief only.[2] (Dkt. No. 23 at 13–18.) Where a plaintiff seeks only injunctive relief, the fourth *Eitel* factor weighs in favor of granting the plaintiff's motion. *See MERSCORP Holdings, Inc. v. MERS, Inc.*, No. 16-CV-04380-BLF, 2017 WL 1709351, at *3 (N.D. Cal. May 3, 2017) (holding that where plaintiffs "[did] not seek money damages" that the fourth *Eitel* factor weighed in favor of granting the motion).

### D.  Dispute over Material Facts

There is no indication that the material facts are in dispute. Upon the Clerk's entry of default, Defendant was "deemed to have admitted all well-pleaded allegations" in the complaint. *See Geddes*, 559 F.2d at 560 ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to damages, will be taken as true."). In the absence of any likely factual disputes, this factor weighs in favor of granting the default judgment motion.

### E.  Excusable Neglect

"This factor favors default judgment where the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). There is no basis here to conclude that

---

[2] Plaintiff's Complaint requests nominal damages as relief including an accounting and payment to Plaintiff of Defendant's total profits from the sale of the infringing products. (Dkt. No. 1 at 9.) However, Plaintiff's subsequent motion for default judgment stated that "there is no money at issue since Defendant has not responded and cannot be located, and because Future Motion is not seeking a monetary judgment." (Dkt. No. 23 at 12.) Nominal damages are not addressed given Plaintiff's change in relief requested.  Nor are attorney's fees which Plaintiff likewise listed in its Complaint, but omitted from its motion for default judgment. (Dkt. No. 1 at 9.)

13

Defendant's default resulted from excusable neglect. Defendant was properly served after the Court granted Plaintiff's motion to effect service by email. (Dkt. No. 18.) Plaintiff demonstrated that the email used for service was previously used to send a demand letter resulting in a confirmation of receipt. (*See* Dkt. No. 16-1 ¶ 5–6; 16-6 at 2.) Additionally, Shawn J. Kolitch's declaration stated that Defendant stopped offering products for sale for approximately four months following Kolitch's demand letter, leading to a plausibly inference of Defendant's receipt of the letter through said email address. (Dkt. No. 16-1 ¶ 6.) Accordingly, this factor weighs in favor of default judgment.

### F. Policy Favoring Decision on the Merits

"Cases should be decided on upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. This factor is not dispositive, however, and a defendant's failure to answer the complaint "makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Thus, termination of a case before hearing the merits is permissible when a defendant fails to defend an action. *Id.* Given Defendant's failure to appear, a decision on the merits is impossible.

## IV. Remedy

A default judgment cannot differ "in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. Proc. 54(b). In its motion, Plaintiff clarifies it does not seek any monetary damages, and so the Court need only determine the appropriateness of injunctive relief.

The Patent Act provides a patentee with the "right to exclude others from making, using, offering for sale, or selling the [patented] invention." 35 U.S.C. § 154(a)(1). In furtherance of this right to exclude, district courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. To obtain permanent injunctive relief, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v.*

1  *MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Court has discretion to grant or deny
2  permanent injunctive relief. *Id.*
3    Here, Plaintiff has satisfied the four-factor test. For the first and second factors, the Court
4  concludes that Defendant's continued manufacture and sale of the infringing product and its
5  inducement of infringement is likely to cause irreparable injury to Plaintiff that is not compensable
6  by money. Plaintiff has suffered irreparable injury because Defendant's infringement has resulted
7  in "lost profits, lost sales, and/or lost royalties" as well as "a diminished market for Future
8  Motion's legitimate products."[3] (Dkt. No. 1 ¶ 26; Dkt. No. 23 at 14–15.) *See e.g.*, *Celsis in Vitro,*
9  *Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("Price erosion, loss of goodwill,
10 damage to reputation, and loss of business opportunities are all valid grounds for finding
11 irreparable harm."); *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1368 (Fed. Cir. 2017)
12 ("Evidence showing that no amount of monetary damages, however great, could address the harm
13 tends to show that it is an irreparable harm.") (cleaned up); *see also Ingrid & Isabel, LLC v.*
14 *Bentibo*, No. 18-CV-01856-JCS, 2019 WL 2517524, at *8 (N.D. Cal. May 10, 2019), *report and*
15 *recommendation adopted*, No. 18-CV-01856-HSG, 2019 WL 2515713 (N.D. Cal. June 18, 2019)
16 (probable harm to plaintiff's business reputation and goodwill were sufficient for a determination
17 of irreparable harm); *d.light design, Inc. v. Boxin Solar Co., Ltd.*, No. 13-CV-05988-EMC, 2015
18 WL 7731781, at *4 (N.D Cal. Dec. 01, 2015) (deciding impacts to reputation, business goodwill,
19 business relationships, and effects of price erosion constituted irreparable harm).
20   The Court concludes that the third and fourth factor are also met; the balance of hardships
21 weighs in favor of Plaintiff and an injunction will not disserve the public interest. *See e.g.*, *Oomph*
22 *Innovations LLC v. Shenzhen Bolsesic Elecs. Co. Ltd.*, No. 5:18-CV-05561-EJD, 2020 WL
23 5847505, at *7 (N.D. Cal. Sept. 30, 2020) (deciding that the balance of hardships weighed in favor

---

[3] In its motion for default judgment, Plaintiff cites to *Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1247 (Fed. Cir. 1989), for the rule that infringement of a valid patent presumes irreparable injury. (Dkt. No. 23 at 15.) *Richardson* is no longer good law. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148–49 (Fed. Cir. 2011) (abrogating *Richardson* given the Supreme Court's decision in *eBay*). In *Robert Bosch LLC*, the Federal Circuit held that "*eBay* abolishe[d the] general rule that an injunction normally will issue when a patent is found to have been valid and infringed." *Id.* at 1149. The Court thus sets aside this argument.

15

of granting injunctive relief when the defendants lacked rights to sell the accused product while the plaintiff had intellectual property rights and would suffer irreparable harm due to the defendants' infringement). As demonstrated above, Plaintiff will be harmed by continued infringement of its patents and Defendant improperly infringes upon Plaintiff's products. Finally, although healthy competition generally benefits the public, "the public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 809 F.3d 633, 647 (Fed. Cir. 2015); *see also Oomph Innovations LLC*, 2020 WL 5847505 at *7 ("[T]he public has an interest in preventing products that infringe on U.S. patents from entering the U.S. market.").

Plaintiff has thus shown that a permanent injunction is warranted here.

## CONCLUSION

For the reasons stated above, the undersigned recommends that the Court GRANT the motion and enter default judgment against Defendant. It is further recommended that the district court enter a permanent injunction as follows:

1. Defendant, together with all of its managers, members, officers, agents, servants, employees, partners, vendors, affiliates, sales representatives, successors, attorneys and assigns, dba's, alter egos, affiliates, and all other persons, firms or companies in concert or participation with them shall be PERMANENTLY ENJOINED AND RESTRAINED:

    a. From directly or indirectly making, using, having made, purchasing, offering for sale, importing, advertising, promoting, distributing, transferring, and/or selling any product or component that infringes – either directly and/or indirectly – the Patents-in-Suit, including all such activities regarding components and DIY kits of Onewheel skateboards offered for sale on Defendant's website floatwheel.com;

    b. From directly or indirectly posting, distributing, or performing any photographs, videos, and/or images that describe, explain, show, demonstrate, or illustrate the function of any product in a manner that suggests, induces, infers, or indicates use that constitutes an infringement of the Patents-in-Suit, including all such videos posted on Defendant's Floatwheel YouTube channel; and

    c. From knowingly instructing, aiding, abetting or conspiring with any other person or business entity in engaging in any of the activities referred to in subparagraphs (a) through (b) above.

Any internet service provider, website hosting company, website operator and/or administrator, online video hosting platforms, payment processing service, or any third-party providing services in connection with any of Defendants' infringing products and/or any of Defendants' websites, including without limitation, floatwheel.com, and any online video hosting platforms which are provided with notice of this permanent injunction by Plaintiff shall immediately disable service to any and all listings of any infringing product and cease processing, collecting, and distributing payments for sales of the infringing products to U.S. customers.

Plaintiff shall serve a copy of this Order on Defendant via email.

Any party may file an objection to this recommendation within 14 days after being served with a copy of this Report and Recommendation. *See* Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: December 17, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge